AYCOCK ET AL *v.* AYCOCK.

[81 South. 482, Division A. No. 20650.]

DESCENT AND DISTRIBUTION. *Persons entitled. Heirs and next of kin. Half blood.*

Under Code 1906, sections 1649-1650 (Hemingway's Code, sections 1381-1382), providing that where the intestate leaves no wife or children or descendants of any child his father and mother share equally with his brothers and sisters and that those of the whole blood are to be preferred to those of the half blood; where an unmarried intestate dies without issue or descendants of issue, his estate descends to his father and mother and brothers and sisters of the whole blood to the exclusion of his half blood kindred.

APPEAL from the chancery court of Clay county.

HON. A. J. McINTYRE, Chancellor.

Suit by C. D. Aycock and others by W. J. Williams, guardian, *ad litum,* against J. W. Aycock. From a judg- for the latter, the former appeals.

The facts are fully stated in the opinion of the court.

*J. E. Harrington,* for appellant.

The only question presented in the record in this case is whether the father shall take the land to the exclusion of the brothers and sisters of the half blood. After a careful investigation of the authorities in the

119 Miss.—41.

state of Mississippi, I fail to find any case where this point has ever been passed on by our supreme court.

At common law land shall never lineally ascend but shall rather escheat to the state. Chase's Blackstone, pages 382 and 384; 27 Am. & Eng. Ency. of Law, page 319, 14 Cyc. 41, neither at common law could the half blood inherit, "Nay the estate shall escheat to the lord, sooner than the half bloods shall inherit." Chase's Blackstone, 396; 27 Am. & Eng. Ency, of Law, page 312, 14 Cyc. 35. However, these rules of the common law have been changed by statute in Mississippi, and the estate may ascend to the father from the son. Code 1906, sec. 1649; Hemingway's Code, sec. 1381. Also the common-law rules as to half bloods has been modified by statute, which provides that, "There shall not be, in any case, a distinction between the kindred of the whole and the half blood, except that kindred of the whole blood, in equal degree, shall be preferred to the kindred of the half blood, in the same degree." The ability, therefore, it will be seen, of both the father, and collateral kinsmen of the half blood, to inherit, is dependent entirely upon the statutes. It will also be seen from the statute that there is no distinction between the kindred of the whole blood and the kindred of the half blood, except that the kindred of the whole blood shall be preferred to the kindred of the half blood in the same degree. In order, therefore, to determine in what degree the father is related to M. J. Aycock, and to determine in what degree the half brothers and sisters are related to him. There are two methods of computing kinship. One is according to the canon law, and the other according to the civil law. According to the canon law we begin at the common ancestors and reckon downwards, and in whatever degree the two persons, or the most remote of them, is distant from the common ancestors; that is the degree in which they are related. According to he civil law we begin with the intestate and ascend from him to the common ancestors, and descend

from the common ancestors to the heir, reckoning a degree, for each generation, both in ascending and descending. It will thus be seen that according to the canon law that J. W. Aycock and appellants are related in the same degree to the deceased, J. J. Aycock, but that according to the civil law that J. W. Aycock was related to the deceased in the first degree, but that the appellants were related to him in the second degree. It, therefore, becomes necessary to determine by what law we should compute the relationship. Mr. Blackstone lays down the rule that the canon law was adopted by the common law of England, which as a general proposition, is in the absence of statute, the law of this state, but later authorities hold to the contrary as to the adoption of the canon law by the common law. 27 Am. & Eng. Ency. of Law, pages 310 and 311, and authorities there cited. And the better rule seems to be that the common law adopts the rule of the civil law. However that may be the legislature has adopted the rule of the civil law in computing the next of kin. Code 1906, section 1649, Hemingway's Code, section 1381. And by analogy it would seem that in this state the rule of the civil law would apply here. If it should be decided that the rule of the civil law applies then the appellants, the half bloods are not related to the deceased in the same degree as the father, J. W. Aycock, and not being related in the same degree the father is not under the statute to be preferred to the half-brothers and sisters, but the estate would descend to the father and brothers and sisters under section 1649, Code 1906, section 1381, Hemingway's Code.

*Jeff Busby,* for appellee.

Section 1649 of the Code (Hemingway's Code, 1381) provides: "And when there shall not be a child or children of the intestate, nor descendants of such children, then to the brothers and sisters and father and

mother of the intestate and descendants of such brothers and sisters in equal parts, among them their deceased parent's share." This section also provides, "Computing by the rules of the Civil Law," in arriving at the degree of consanguinity.

Section 1650 of the Code (Hemingway's Code, 1382) "Half Bloods.—There shall not be, in any case, a distinction between the kindred of the whole blood and half blood, except that the kindred of the whole blood, in equal degree, shall be preferred to the kindred of the half blood in the same degree."

The new Standard Dictionary (Funk & Wagnalls), page 560, in defining "Consanguinity" states as follows: "In lineal consanguinity each generation counts as a degree, both in civil and canon law, collateral consanguity is reckoned thus: In canon law the steps between the common ancestor and the remoter persons are counted. Thus, uncle and nephew are related in the second degree, because the nephew, as grandson, is two degrees from the common ancestor. The nephew is also in the second degree from his uncle's child, who is his first cousin, and in the third degree from his cousin's child, who is his second cousin.

"In the civil law the degrees from the common ancestor are numbered on both sides. Thus, brothers being each one removed, are related in the second degree instead of the first, first cousins in the fourth instead of the second degree, and second cousins in the sixth instead of the third degree.

Under our statute fathers and brothers and sisters of the whole blood inherit in the same class, being related in the same degree computing by the canon law, but under the civil law the father is related in the first degree, brothers and sisters in the second degree, applying our statute to the facts in the case at bar. Should it be decided by the court that the degrees of consanguinity in which the parties to this cause are related to the deceased Aycock are to be computed by the canon

law, then clearly under section 1650 of the Code (Hemingway's Code, 1382) the appellee would inherit the land involved in this suit to the ·exclusion of the appellant under the provisions "that the kindred of the whole blood, in equal degree, shall be preferred to the kindred of the half blood in the same degree."

"Under other statutes those of the whole blood take precedent over those of the half blood in the distribution of real property, kindred of the half blood taking if there are no kindred of the whole blood in equal degree, and children of a deceased brother or sister of the whole blood being preferred to brothers or sisters of the half blood." 14 Cyc. 46; *Fatheree* v. *Fatheree,* Walk. 311; *Scott* v. *Terry,* 37 Miss. 65." If the descendants of brothers and sisters of the whole blood, as announced in *Scott* v. *Terry, supra,* by analogy, it seems clear that the father would take to the exclusion of brothers and sisters of the half blood. "The general rule now is that if a person dies intestate without lawful descendants, but leaving parents, his or her estate, both real and personal, goes to them, subject to the right of a surviving husband or wife. Sometimes they take jointly or as tenants in common; usually if one parent is dead, the surviving parent takes all the estate, both real and personal, of a deceased child dying without issue, subject to the right of a surviving husband or wife." This rule is modified of course by our statute.

Should the consanguinity, or relationship, of appellants to their deceased half brother, Aycock, be computed by the civil law, and the facts presented in this case be viewed by the court as not within our statute, then the father would take to the exclusion of the half brother and sister, he being related in the first degree and they in the second degree to the deceased M. J. Aycock.

This being a case of first impression on the facts presented, so far as I have been able to find taking into

consideration the degree of relationship, as computed by both the canon and civil law, reasoning by analogy from adjudicated cases containing kindred questions, it seems to me that the learned chancellor in the court below was eminently correct in his holding and that this case should be affirmed, in the supreme court, and it is respectfully submitted.

HOLDEN, J., delivered the opinion of the court.

M. J. Aycock, a single man, died intestate, owning the land in controversy in this suit. The deceased left his father, J. W. Aycock, appellee, and his half brothers and sisters, appellants, surviving him. The case involves the question of descent of the land as between the father, the appellee, J. W. Aycock, and the appellants, the half brothers and sisters of the deceased.

The inquiry for our determination is whether the father shall take the land to the exclusion of the brothers and sisters of the half blood or inherit equally with them. The following statutes are to be considered in passing upon the proposition presented.

"1649 (1543) Descent of Land.—When any person shall lie seized of any estate of inheritance in lands, tenements, and hereditaments not devised, the same shall descend to his or her children, and their descendants, in equal parts, the descendants of the deceased child or grandchild to take the share of the deceased parent in equal parts among them. And when there shall not be a child or children of the intestate nor descendants of such children, then to the brothers and sisters and father and mother of the intestate and the descendants of such brothers and sisters in equal parts, the descendants of of a sister or brother of the intestate to have in equal parts among them their deceased parent's share. And if there shall not be a child or children of the intestate, or descendants of such children, or brothers or sisters, or descendants of them, or father or mother, then such

estate shall descend, in equal parts, to the next of kin of the intestate in equal degree, computing by the rules of the civil law. And there shall not be any representation among collaterals, except among the descendants of the brothers and sisters of the intestate.

"1650 (1544) Half Bloods.—There shall not be, in any case, a distinction between the kindred of the whole and half blood, except that the kindred of the whole blood, in equal degree, shall be preferred to the kindred of the half blood in the same degree."

We have been unable to find any authority decisive of the question before us, and we are left, therefore, to depend entirely upon the construction of our statutes in determining the law involved. It is certain that under the above section 1649, Code of 1906 (section 1381, Hemingway's Code), where intestate leaves no wife or child or descendant of any child, his estate goes to his brothers and sisters of the whole blood and to his father and mother, in equal parts. In other words, in such case the father inherits equally with the whole-blood brothers and sisters of the deceased; and, this being true, we think the father, by statute, is put in the same inheritable class with the brothers and sisters of the whole blood, and as such takes to the exclusion of the brothers and sisters of the half blood. There being no whole-blood brothers or sisters or descendants of them, nor wife or children or descendants of children, or mother, in this case the father takes exclusively over all other kindred.

It is unnecessary to discuss the different degrees of kinship as computed by the canon and civil law with reference to their application here, because when the statute capacitated the father to inherit from his deceased son, in the same class with the brothers and sisters of the whole blood of the deceased, the father is preferred to the exclusion of the half bloods the same as if he were in fact one of the brothers or sisters of the whole blood.

The father here is the preferred heir over the half-blood kindred of the deceased, and as such takes the land in controversy. The judgment of the lower court is affirmed.

*Affirmed.*